IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| BETH LEANN FULLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:18-CV-32-D-BR |
| | § | |
| HEALTHCARE SERVICES GROUP, INC., | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
TO GRANT DEFENDANT'S MOTION TO DISMISS AND COMPEL
ARBITRATION**

Before the Court is Defendant Healthcare Services Group, Inc.'s ("HSG") Motion to Dismiss and Compel Arbitration. [ECF 17]. Plaintiff Beth Leann Fuller ("Fuller") brought negligence claims against her former employer, HSG, after a workplace injury. [ECF 1 at 2]. HSG asks the Court to compel Fuller to arbitrate these claims and stay or abate the action until arbitration is complete pursuant to the arbitration agreement acknowledgment (the "acknowledgment") it contends Fuller signed. [ECF 17]. Fuller is adamant her signature on the arbitration agreement is a forgery. [ECF 18 at 2]. The issues are:

(1) whether a valid arbitration agreement exists; and

(2) whether Fuller is estopped from refusing to arbitrate because she accepted benefits under HSG's Injury Benefit Plan (the "Plan").

The Court finds a valid arbitration agreement does not exist, but direct benefits estoppel binds Fuller to the agreement because she purposefully sought and obtained benefits under the Plan. The Court recommends that the motion be GRANTED.

## I. FACTS SURROUNDING THE PAPERWORK AT ISSUE

The evidentiary hearing on October 12, 2018 revealed the relevant facts contained in this section. On February 17, 2016, Fuller completed several new-hire documents in the presence of the District Manager of HSG, Christopher Montoya ("Montoya"). Montoya printed Beth Fuller's name, the date, and the location or department on the acknowledgment. "Beth Fuller" is signed on the acknowledgment. Fuller was an at-will employee.[1] Montoya took the documents home, faxed the documents to a Pennsylvania office for processing, and placed the documents in a filing cabinet at his house. On January 23, 2017, Fuller was injured while preparing a room for an incoming patient. [ECF 1 at 2]. Fuller called Montoya from the hospital to obtain HSG's insurance information so that she could give the information to the hospital. HSG has paid Fuller's medical bills and has direct deposited wage replacement payments into Fuller's bank account. Fuller testified she thought her medical bills were being paid through workers' compensation insurance and did not know who or what was paying her salary while she missed work.

Beyond this point, the facts are disputed. Both parties deny signing "Beth Fuller" on the acknowledgement. HSG posits Fuller signed the acknowledgment on February 17, 2016. [ECF 17 at 4]. Fuller says she saw the Plan and arbitration agreement for the first time in her attorney's office, several months after she was injured. The below documents regarding the issue of Fuller's signature were admitted at the evidentiary hearing and discussed by both parties in testimony.[2]

---

[1] HSG takes the position Fuller was an at-will employee. [ECF 23 at 4]. Fuller has not argued otherwise, and the Court is unaware of any employment agreement to the contrary.
[2] All highlights made on exhibits by counsel during October 12, 2018 evidentiary hearing.

| Exhibit | Contents | Parties' Claims |
|---|---|---|
| Movant's Ex. 1-B (Receipt, Safety Pledge and Arbitration Acknowledgement) | *signature image: Beth Fuller, 02/17/16, Coronado Pampa IFT* | Fuller denied seeing this document or signing it on February 17, 2016.<br><br>Montoya testified he printed "Beth Fuller," the date, and the location or department. |
| Resp't Ex. 1, page 6 (signature page of Restrictive Covenant Agreement dated 3/30/2016) | *signature image: Beth Fuller / Chris Montoya, District Manager, 3/30/16* | Fuller denied signing this document on February 17, 2016.<br><br>Montoya testified he printed "Beth Fuller" and the date. |
| Resp't Ex. 1, page 12 (signature page of Restrictive Covenant Agreement dated 3/30/2016) | *signature image: Beth Fuller Rollins / Chris Montoya, District Manager, 2/17/16* | Fuller denied signing this document on February 17, 2016. |
| Movant's Ex. 2/Resp't Ex. 1, page 15 (Patient Protection Affordable Care Act (PPACA) Exchange Acknowledgement)) | *signature image: Beth Fuller-Rollins, Coronado, 2-17-16, Chris Montoya* | Fuller testified she signed and dated.<br><br>Montoya printed "Beth Fuller-Rollins," the facility name, and the date. He also printed and signed his name. |
| Movant's Ex. 3 (Employment Eligibility Verification) | *Form I-9 image: Fuller-Rollins, Beth, 1324 Duncan, Pampa, TX 79065, 02/17/16* | Fuller testified she signed and dated.<br><br>Montoya testified he printed "Beth Fuller-Rollins," Fuller's address, date of birth, and citizenship. |

| | | |
|---|---|---|
| Movant's Ex. 4 (Fair Credit Reporting Act-Applicant/Employee Disclosure and Authorization Form) | *[image of signed FCRA Disclosure and Authorization Form]* | Fuller testified she signed and dated.<br><br>Montoya testified he printed "Beth Fuller-Rollins." |
| Resp't Ex. 1, page 16 (Form W4) | *[image of signed Form W-4]* | Fuller testified she signed.<br><br>Montoya testified he printed "Beth Fuller-Rollins," Fuller's address, and the date. |
| Resp't Ex. 1, page 19 (Employee Acknowledgement of Workers' Compensation Network) | *[image of signed Employee Acknowledgement]* | Fuller testified she signed.<br><br>Montoya testified he printed "Beth Fuller-Rollins" and Fuller's address. |
| Resp't Ex. 1, page 20 (HCSG Staff Leasing Solutions Notice to Employees (Texas)) | *[image of signed HCSG Notice]* | Fuller testified she signed.<br><br>Montoya testified he printed "Beth Fuller Rollins" and the date. |
| Resp't Ex. 1, page 24 (signature page of Mutual Arbitration Agreement dated 2/17/2016) | *[image of signature page of Mutual Arbitration Agreement]* | Fuller testified she signed.<br><br>*The parties do not argue this agreement applies. |

The following exemplars of Fuller's signature were admitted into evidence at the hearing and cover a period of nearly twenty years.

| Exhibit | Contents |
|---|---|
| Resp't Ex. 3-P588 | OfficeMax receipt dated 12/06/02, Hurst, TX, cardholder B Fuller, signed "Beth Fuller"; marked "Respondent's Ex 3"; P588 |
| Resp't Ex. 3-P589 | Texas Driver License, FULLER-ROLLINS, BETH LEANN, Class C, Iss 2011, Exp 2017, signed "Beth Fuller-Rollins"; P589 |
| Resp't Ex. 3-P590 | Texas Department of Public Safety Driver License, FULLER, BETH LEANN, Class C, Expires -05, Sex F, signed "Beth Fuller"; P590 |
| Resp't Ex. 3-P591 | Florida Driver License, The Sunshine State, BETH LEANN FULLER, Class E, Safe Driver, signed "Beth Fuller"; P591 |
| Resp't Ex. 3-P593 | "I assume financial responsibility for all materials borrowed on this card and agree to follow all rules of the Hurst Public library" signed "Beth Fuller"; P593 |

| | |
|---|---|
| Resp't Ex. 3-P595 | |
| Resp't Ex. 3-P596 | |
| Resp't Ex. 3-P597 | |
| Resp't Ex. 3-P602 | |
| Resp't Ex. 3-P603 | |
| Resp't Ex. 3-P604 | |
| Resp't Ex. 3-P606 | |
| Resp't Ex. 3-P607 | |
| Resp't Ex. 3-P608 | |
| Resp't Ex. 4 | |

One signature is dispositive, but the below chart gives context to the dispute. Both parties deny signing Fuller's name on the three following documents.

| Exhibit | Signature Disputed | Undisputed Signature of Fuller on Resp't Ex. 1, page 24 signed on the same day in question |
|---|---|---|
| Movant's Ex. 1-B (Receipt, Safety Pledge and Arbitration Acknowledgement) | [signature image] | [signature image] |
| Resp't Ex. 1, page 6 (signature page of Restrictive Covenant Agreement dated 3/30/2016) | [signature image] | [signature image] |
| Resp't Ex. 1, page 12 (signature page of Restrictive Covenant Agreement dated 2/17/2016) | [signature image] | [signature image] |

## II.   HSG'S GROUNDS FOR DISMISSAL AND TO COMPEL ARBITRATION

In its Motion to Dismiss and Compel Arbitration, HSG contends: (1) Fuller's claims are subject to arbitration because a valid arbitration agreement exists that covers Fuller's claims; and (2) even if a valid arbitration agreement does not exist, the doctrine of direct benefits estoppel binds Fuller to the arbitration agreement because Fuller sought and obtained direct benefit under the Plan and also because her negligence claims rely on the terms of the Plan. [ECF 17 at 4–6]. Fuller responds that there is no valid arbitration agreement because she did not sign the acknowledgement. [ECF 18 at 2]. Fuller further argues direct benefits estoppel does not bind her to the arbitration agreement despite the lack of her signature for two reasons. First, the doctrine

does not apply to contemplated signatories, but rather to third parties. [ECF 18 at 3]. Second, her negligence claims stand independently of the Plan. [ECF 18 at 2].

### III. ANALYSIS

#### A. No Valid Arbitration Agreement Exists

Enforcement of an arbitration agreement involves two steps: (1) whether there is a valid agreement to arbitrate, and (2) whether the dispute falls within the scope of that agreement. *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018) (citing *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013)). Whether Fuller signed the acknowledgement implicates the first step—whether a valid arbitration agreement exists.

"Determining whether there is a valid arbitration agreement is a question of state contract law and is for the court." *Huckaba*, 892 F.3d at 688 (internal citations omitted); *see Walker v. Tao Operating L.L.C.*, No. 1:13-CV-619, 2014 WL 11904577, at *7 (E.D. Tex. Aug. 14, 2014), *report and recommendation adopted sub nom. Walker v. TA Operating L.L.C.*, No. 1:13-CV-619, 2014 WL 11860775 (E.D. Tex. Sept. 12, 2014) (internal citations omitted) (Whether a party signed any agreement to arbitrate or whether the signature is a forgery are issues a court must resolve before sending a dispute to arbitration.). "Under Texas law, a binding contract requires: (1) an offer; (2) an acceptance in strict compliance with the terms of the offer; (3) a meeting of the minds; (4) each party's consent to the terms; and (5) execution and delivery of the contract with intent that it be mutual and binding." *Id.* at 689. The "party moving to compel arbitration must show that the agreement meets all of the requisite contract elements." *Huckaba*, 892 F.3d at 688 (citing *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003)). Because the validity of the

agreement is a matter of contract, the strong federal policy favoring arbitration does not apply at the first step of the analysis.[3] *Id.* (citing *Klein*, 710 F.3d at 236).

The Court must determine whether HSG met its burden to show Fuller signed the acknowledgement. No valid arbitration agreement exists if Fuller did not sign the acknowledgment. *See Prevost v. Burns Int'l Sec. Servs. Corp.*, 126 F.Supp.2d 439, 441 (S.D. Tex. 2000) ("Thus, if Plaintiff did not sign the Arbitration Agreement, it obviously cannot be valid."). "The Fifth Circuit has not provided any guidance on the exact procedures a court is to use in determining whether a signature on an arbitration agreement is a forgery." *Id.* (internal citations omitted). However, *Prevost v. Burns Int'l Sec. Servs. Corp.* is instructive, even though the court stopped short of resolving the fact issue. 126 F.Supp.2d 439.

In *Prevost*, the parties disputed whether plaintiff signed the arbitration agreement. *Id.* at 441. The court noted that the documents offered by defendant, which plaintiff allegedly signed, showed two different types of signatures. *Id.* On some documents the signature appeared in a "flowery" style, and on others it was "compressed" with "less distinct lettering." *Id.* The court pointed out that some of the exemplars provided by defendant did not look like the exemplar signatures provided by plaintiff on his driver's license and social security card. *Id.* Although dissimilar, the court found it "equally possible" that plaintiff merely signed his name in a different manner, the signature on the agreement was dissimilar because of spacing restrictions, or plaintiff used a different writing utensil. *See id.* at 442. The court found a fact issue existed regarding whether the signature on the arbitration agreement was plaintiff's. *Id.*

---

[3] The scope of the arbitration agreement is not before the Court. Fuller agrees her claims would be within the scope of the agreement if it were valid. [ECF 18 at 1–2]. The Court's analysis is limited to the threshold question of whether a valid agreement exists, and if not, whether equity nonetheless binds Fuller to the agreement. The federal policy favoring arbitration only applies when a Court is determining the scope of an arbitration agreement, *after* a Court has found it is valid. Because the Court never reaches the issue of scope, the policy favoring arbitration does not play a role in the Court's analysis.

One more visual aid is required to appreciate HSG's argument. Montoya testified he personally witnessed Fuller sign several documents during one sitting on February 17, 2016. The signatures Montoya says he saw Fuller make on that day appear on the documents in evidence as follows:

| Exhibit | Contents |
|---|---|
| Movant's Ex. 1-B (Receipt, Safety Pledge and Arbitration Acknowledgement) | *[signature]* Beth Fuller  Date 02/17/16 |
| Movant's Ex. 2/Resp't Ex. 1, page 15 | *[signature]* Beth Fuller  Date 2-17-16 |
| Movant's Ex. 3 | *[signature]* Beth Fuller  Date 02/17/16 |
| Movant's Ex. 4 | *[signature]* Beth Fuller |
| Resp't Ex. 1, page 12 | *[signature]* Beth Fuller 2/17/16 |
| Resp't Ex. 1, page 16 | *[signature]* Beth Fuller  Date 2/17/16 |
| Resp't Ex. 1, page 19 | *[signature]* Beth Fuller 2/17/16 |
| Resp't Ex. 1, page 20 | *[signature]* Beth Fuller Rollins |
| Resp't Ex. 1, page 24 | *[signature]* Beth Fuller 2/17/16 |

Compared to more than twenty undisputed exemplars of Fuller's signature, the signature on the acknowledgment in question is noticeably different because it misspells "Beth," it appears in a more printed, less continuous style than Fuller's undisputed signature, and it has a noticeably different "F" at the beginning of "Fuller."[4] Montoya says he personally witnessed Fuller sign the above documents, but even he cannot explain why Fuller spontaneously adopted a different

---

[4] HSG has taken the position that Montoya printed Beth Fuller's name on two specific documents on the same day—a notification of workers' compensation insurance and the arbitration agreement acknowledgment at the end of the Plan. It does not seem that these two documents could have both been legally enforceable on the same day. HSG contends Beth Fuller reviewed and signed both documents.

signature that misspells her name. HSG does not contend Fuller was interrupted while signing the documents and became distracted, that she signed any of the documents in a different room on a different surface, or even that the pen she was writing with was not working correctly.

HSG's only explanation for the difference in signatures is that Fuller's signature is inconsistent. The Court agrees there is a wealth of slight variations in the seven undisputed signatures above that Fuller admitted she made on February 17, 2016. However, none of the undisputed signatures are inconsistent to the degree of the signature on the acknowledgement. HSG has not offered a single exemplar resembling the signature on the acknowledgement or showing that Fuller sometimes spells "Beth" with two "Ts," except for Resp't Ex. 1, page 6 and 12, which are also disputed. Neither party offered a handwriting expert. However, Fuller offered exemplars from documents spanning almost twenty years that suggest her signature is consistent and has never resembled the signature on the acknowledgement. The Court finds HSG has not met its burden to show Fuller signed the document and a valid arbitration agreement exists.[5]

HSG argues for the first time in its post-hearing brief that a valid arbitration agreement exists because Fuller received notice of the agreement, accepted its terms, and continued working for HSG. [ECF 23 at 4]. It broadly asserts that Montoya's testimony is sufficient to show Fuller was given notice of the agreement. [ECF 23 at 4]. HSG cites to *In re Dallas Peterbilt, Ltd., L.L.P.*, wherein the Texas Supreme Court held that a plaintiff was bound to an arbitration agreement because he signed an acknowledgement stating he received and had an opportunity to read a summary of the arbitration agreement. 196 S.W.3d 161, 163 (Tex. 2006). Plaintiff claimed he never saw the arbitration agreement or summary but agreed he signed the acknowledgement. *Id*.

---

[5] The analysis regarding whether a valid arbitration agreement exists does not require the Court to determine whether a forgery was committed in connection with the acknowledgment, and the Court declines to make any such determination.

at 162. The court found the plaintiff had notice of the agreement via a sentence mentioning the summary of the agreement on the acknowledgment page he signed. *See id.*

The facts of *In re Dallas Peterbilt, Ltd., L.L.P.* are distinguishable. In that case, it was undisputed that plaintiff signed the arbitration agreement acknowledgement page. HSG's only evidence Fuller received notice of the agreement is Montoya's testimony regarding what Fuller saw on the day in question. The Court has determined that HSG has not met its burden to show Fuller signed the acknowledgement. The Court likewise finds that HSG has not met its burden to show that Fuller otherwise had notice of the arbitration agreement in question.

### B. Direct Benefits Estoppel Binds Fuller to the Arbitration Agreement

HSG argues that even if Fuller's signature was forged, direct benefits estoppel binds Fuller to the agreement not only because she sought and received benefits under the Plan, but also because her negligence claims rely on the terms of the Plan.[6] [ECF 23 at 3]. Direct benefits estoppel can bind a nonparty to an arbitration agreement in two ways: "(1) by knowingly seeking and obtaining direct benefits from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 472–73 (5th Cir. 2010) (internal quotations and citations omitted); *see USHealth Grp., Inc. v. South*, 636 Fed.Appx. 194, 199 (5th Cir. 2015) (per curiam) (citing *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 131 (Tex. 2005)).[7]

---

[6] Because HSG failed to meet its burden, the Court assumes, without deciding, that Fuller did not sign the acknowledgement on the agreement in question for purposes of its analysis.

[7] The Court acknowledges Fuller's argument that direct benefits estoppel does not apply because Fuller's claim is a common-law tort claim and does not depend on the Plan or the arbitration agreement. [ECF 22 at 4]. Fuller cites two Texas cases in support of her argument. [ECF 22 at 3–5]; *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 527–28 (Tex. 2015); *Sikes v. Heritage Oaks W. Ret. Vill.*, 238 S.W.3d 807, 810 (Tex. App.—Waco 2007, pet. denied). The Court recognizes Fuller's argument as the second form of direct benefits estoppel but does not view its applicability as dispositive because it is only one of two ways in which direct benefits estoppel may apply. Under Texas law, even if a party's claims do not arise under a contract with an arbitration agreement, direct benefits estoppel may still apply if the party "seek[s] or obtain[s] direct benefits from a contract by means other than a lawsuit." *ENGlobal U.S., Inc. v. Gatlin*, 449 S.W.3d 269, 275 (Tex. App.—Beaumont 2014, no pet.) (citing *In re Weekley*

HSG first argues direct benefits estoppel applies because Fuller sought and obtained benefits under the Plan by contacting Montoya to report her injury. [ECF 23 at 5]. Montoya then told Fuller where to seek medical treatment and that HSG would pay for such services. *Id.* The third-party administrator of the Plan has paid over $20,000 in medical expenses on behalf of Fuller. *Id.* Fuller admits she received payment of her medical bills and wage replacement payments, but testified she thought workers' compensation insurance was providing the benefits. Accordingly, the question before the Court is whether Fuller is estopped from refusing to arbitrate when she sought, received, and accepted benefits without knowledge the benefits were tied to the Plan and its arbitration agreement. The undersigned finds that because Fuller purposefully sought, received, and accepted benefits, she is estopped from refusing to arbitrate under the Plan that paid those benefits.

In *Bailey*, Plaintiff worked for a rehabilitation facility and was injured while attempting to lift a patient from his wheelchair. *Bailey*, No. 9:15-CV-57, 2017 WL 664445, at *1. Plaintiff invoked the administrative procedures under the plan her employer provided and sought benefits under the plan, including payment for spinal surgery. *Id*. at *6. Plaintiff later sued, and defendants filed a motion to compel arbitration based on the arbitration agreement plaintiff signed and also on direct benefits estoppel. *Id*. at *1. Plaintiff argued she did not know she was signing an arbitration agreement and that direct benefits estoppel requires more than merely showing she accepted benefits under an injury benefit plan that contained an arbitration agreement. *Id*. at *2. The court held that direct benefits estoppel prevented plaintiff from seeking and accepting benefits

---

*Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005)). Fifth Circuit case law also identifies two forms of direct benefits estoppel that may bind a party to an arbitration agreement. *See Noble*, 620 F.3d at 472–73; *see also Bailey v. HealthSouth Corp.*, No. 9:15-CV-57, 2017 WL 664445, at *5 (E.D. Tex. Jan. 26, 2017) ("Direct-benefits estoppel can apply to bind a non-signatory to an arbitration agreement in two ways.") (internal citations omitted). The cases Fuller cites analyze only one form of directs benefit estoppel—the scenario where a party sues on the terms of a contract on the one hand and refuses to arbitrate pursuant to contract's terms on the other.

under a plan containing an arbitration agreement and then refusing to arbitrate. *See id*. The court concluded plaintiff should be estopped from refusing to arbitrate because she sought "damages in the form of reimbursement for medical expenses" and such benefits were covered by the plan. *Id*.

In contrast, the Fifth Circuit Court of Appeals declined to apply direct benefits estoppel in *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469 (5th Cir. 2010). In that case, Noble bought wire mooring rope manufactured by Bridon from Certex, Bridon's distributor. *Id.* at 471. Certex then executed a purchase order agreement with Bridon that stated the type of rope Noble wanted and Noble's address for shipping. *Id*. The Certex/Bridon purchase order agreement contained an arbitration agreement. *Id*. Noble was not a party to the purchase order agreement and never received a copy of it or the arbitration agreement. *See id*. at 472. The ropes in question failed during Hurricane Ike, and Noble's property was damaged. *Id*. Noble sued Bridon and Certex, and both defendants moved to compel arbitration based on the arbitration agreement in the purchase order. *See id*. In determining whether Noble received a direct benefit from the purchase order agreement such that direct benefits estoppel applied, the court reasoned:

> Noble alleges that it did not have any knowledge of the Purchase Order Agreements until after this litigation began. It argues that it "was never apprised of the existence, much less any specific terms, of the [Purchase Order Agreements]." Appellees do not point to any evidence that Noble had any knowledge of the Purchase Order Agreements at the time Noble purchased and received the ropes, and the district court did not find that Noble had such knowledge. Because no evidence supports a conclusion that Noble knew of the terms of the Purchase Order Agreements, Noble could not have the knowledge necessary to support the "knowingly exploited" theory of direct benefits estoppel.

*Id*. at 473–74. The facts of *Noble* are distinguishable from the facts of *Bailey*. Noble received a direct benefit from the Certex/Bridon purchase order agreement because the agreement caused the ropes that Noble ordered to be shipped to it. However, Noble never actively or purposefully sought to enforce the terms of the purchase order agreement because he did not even know it existed. *Id*.

The facts of this case are more like the facts in *Bailey*. *Assuming arguendo* Fuller was not aware of the arbitration agreement, she still purposefully sought benefits that flowed directly from the Plan. *See Bailey*, No. 9:15-CV-57, 2017 WL 664445, at *6.

To be sure, the analysis focuses on whether the evidence shows that Fuller received direct and substantial benefits from the Plan. *See Ace American Ins. Co. v. Huntsman Corp.*, 255 F.R.D. 179, 188, 202 (S.D. Tex. 2008) (internal quotation and citation omitted). In *Ace American*, a corporation argued direct benefits estoppel did not bind it to an insurance contract containing an arbitration agreement it was not a party to. *Id*. at 185. The court's analysis focused on whether the corporation received direct as opposed to indirect benefits from the contract, not whether it was familiar with the contract and its arbitration agreement.[8] *See id*. at 206. The court found the facts alleged would support the application of the doctrine because the corporation submitted proofs of loss to insurance companies, claimed entitlement to interim payments, corresponded with insurance company representatives regarding its claims, and made claims. *Id*. at 205–06.

Here, Fuller's actions caused a party to act on her behalf, and she received the benefits she asked for, as the parties in *Bailey* and *Ace American* did. She invoked the administrative procedures necessary to receive medical benefits by calling Montoya from the hospital. [ECF 17 at 45]. Fuller admits she called Montoya to obtain HSG's insurance information and give that information to the hospital. Fuller has received and accepted more than $20,000 in medical benefits. HSG paid a claim on Fuller's behalf as recently as January 2018, the month before Fuller sued HSG. [ECF 23

---

[8] *Ace American's* thorough analysis reveals that the issue of direct benefits estoppel turns on whether the benefits received were direct or indirect, not whether the party to be estopped knew exactly from which contract the benefits flowed. *See id*. at 200–08. Did the party to be estopped merely indirectly benefit without taking any action, or did the party actively seek out, demand, and accept the benefits? *See id*. at 206 (Corporation did not merely receive insurance funds, but rather, "sought and received monetary payment" under the insurance contract.). It is this distinction that determines the application of direct benefits estoppel, not what the plaintiff knew about the documents at issue as Fuller suggests. That Fuller may have known little or nothing of the Plan and arbitration agreement does not change the reality or consequences of her actions—HSG has provided Fuller thousands of dollars in benefits at her request. Now that it is HSG's turn to benefit, Fuller asks the Court to disregard the agreement. This is the exact result the Texas Supreme Court stated direct benefits estoppel prevents. "A nonparty cannot both have his contract and defeat it too." *In re Weekley Homes, L.P.*, 180 S.W.3d at 135.

at 12]. Fuller thought the benefits were coming from a workers' compensation insurance plan. Regardless of what plan provided the benefits, Fuller asked for HSG's insurance information, sought benefits, knew HSG was providing her benefits, and accepted the benefits. Were the Court to accept Fuller's argument, an employee could seek and receive benefits from an employer yet avoid arbitration by skillfully maintaining plausible deniability as to the source of the benefits.

The Court acknowledges Fuller's argument that she was not aware of the arbitration agreement or the type of Plan providing her benefits. While Fuller is correct that her lack of knowledge of the Plan and the arbitration agreement are important, those facts have already been considered in the Court's analysis. To consider Fuller's knowledge of the documents in issue at this stage would be to engage in a second legal analysis to determine if a valid agreement exists. The point of this equitable analysis is not what Fuller knew regarding the Plan, but that her requests for insurance information and benefits were the catalyst for HSG's performance under the Plan. There is no denying that Fuller intended for HSG to act on her behalf and it did so faithfully. Fuller now asks the Court to ignore the terms of the document she has benefitted from for months. In equity, a court "eschew[s] rigid absolutes and look[s] to the practical realities and necessities inescapably involved in reconciling competing interests." *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973). Surely direct benefits estoppel stops a plaintiff from receiving thousands of dollars of benefits under an injury benefit plan and then forsaking the document, its benefits in hand, upon learning it was not the type of plan she thought it was. The Court finds that the first form of direct benefits estoppel prevents Fuller from refusing to arbitrate and binds her to the arbitration agreement within the Plan.

HSG further argues direct benefits estoppel applies because Fuller seeks to enforce the terms of the Plan and asserts claims that must be determined by reference to the Plan. [ECF 23 5–

6]. As in *Bailey*, Fuller is seeking medical care expenses incurred in the past and future. [ECF 1 at 3]. The Court acknowledges that continued benefits, the submission of medical bills for payment, and appeals of adverse benefit determinations are all governed by the Plan. [ECF 17 46–54]. However, *Noble* states that a party may disclaim any reliance on a document and place its bet on whatever duties the defendant owes by law. *Noble*, 620 F.3d at 475–76. That is what Fuller did. She pleaded only negligence theories that arise under common law. [ECF 1 at 3–4]. Fuller does not seek to enforce any term in the Plan, and she will only be successful if she shows HSG owed a duty under Texas tort law.⁹

HSG has not pointed the Court to any term in the Plan that must be referenced to litigate Fuller's negligence claims. For example, HSG has not explained why the Plan must be referenced to determine if HSG failed to enforce safety rules or failed to provide Fuller with adequate assistance on the day in question. The second form of direct benefits estoppel does not apply. *See Noble*, 620 F.3d at 475–76; *Pavecon Holding Co. v. Tuzinski*, Civil Action No. 4:16-cv-00888-ALM-CAN, 2017 WL 2539414, at *4 (E.D. Tex. May 19, 2017) (citing *Carr v. Main Carr Dev., LLC*, 337 S.W.3d 489, 497–99 (Tex. App.—Dallas 2011, pet. denied) ("[a] non-signatory cannot be compelled to arbitrate when claims merely 'touch matters' covered by a contract or 'are dependent upon' a contract; instead, the claims must rely on the terms of the contract").

### C. Unclean Hands Does Not Apply

Fuller raised the affirmative defense of unclean hands for the first time at the evidentiary hearing. Further, in one sentence in her post-hearing brief, she states HSG "should not be entitled to equity when it forged [Fuller's] signature and therefore comes to the Court with unclean hands."

---

⁹ Further, the "contract" at issue is an injury benefit plan in lieu of workers' compensation, not an employment agreement describing each parties' duties to the other.

[ECF 22 at 4]. "The defense of unclean hands derives from the equitable principle that the party seeking equity must come into court with clean hands." *Cantu v. Guerra & Moore*, LLP, 549 S.W.3d 664, 671 (Tex. App.—San Antonio Oct. 4, 2017, no pet.) (citing *Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988)). "The party claiming unclean hands bears the burden of showing it was injured by the other party's unlawful or inequitable conduct." *Id*. (citing *Park v. Escalera Ranch Owners' Ass'n, Inc.*, 457 S.W.3d 571, 597 (Tex. App.—Austin 2015, no pet.)). The doctrine should only be applied if the party claiming unclean hands has been seriously harmed and the wrong complained of cannot be corrected without applying the doctrine. *Id*. (citing *Park*, 457 S.W.3d at 597).

The Court notes the shifting of the burden at this point in its analysis. HSG carries the burden to show a valid arbitration agreement exists, or in the alternative, equity binds Fuller to the arbitration agreement through direct benefits estoppel. As stated above, the Court finds that HSG did not carry its burden to show a valid arbitration agreement exists, but that the first form of direct benefits estoppel (seeking and obtaining benefits) applies to bind Fuller to the arbitration agreement. Fuller, the party claiming unclean hands, now carries the burden to show estoppel should not apply because she was seriously harmed by HSG's unlawful or inequitable conduct and the harm cannot be corrected without applying unclean hands. The Court appreciates Fuller's position that something about the way Fuller's new-hire documents were handled seems amiss, and the Court agrees that HSG did not carry its burden to show Fuller signed the acknowledgement. However, Fuller took on a heavier burden than poking holes in HSG's case when she asserted unclean hands. That burden was, in part, to show HSG engaged in unlawful or inequitable conduct – for example, that Montoya forged her signature on the agreement in question.

The Court cannot apply the doctrine absent sufficient evidence that HSG engaged in unlawful or inequitable conduct, and the testimony elicited at the hearing leaves too much to the imagination. Neither party offered a handwriting expert. Montoya and Fuller both deny signing Fuller's name on the acknowledgement. Nevertheless, Fuller provided no helpful testimony regarding how, when, or why Montoya would have forged her signature. Thus, there is insufficient evidence to support a finding that HSG engaged in unlawful or inequitable conduct. *See Reich & Binstock, LLP v. Scates*, 455 S.W.3d 178, 185 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (testimony regarding the alleged unauthorized use of an electronic signature was insufficient for trial court as the factfinder to find fraudulent conduct that would warrant the application of unclean hands). Even assuming Fuller carried her burden to show HSG forged her signature, Fuller did not explain in her response to HSG's motion, at the evidentiary hearing, or in her post-hearing brief how she is seriously harmed or why such harm cannot be corrected without applying unclean hands. In the absence of such evidence, the Court will not presume harm.

## IV.    RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that Defendant's Motion to Dismiss & Compel Arbitration [ECF 17] be GRANTED.

## V.    INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions, and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED November 21, 2018.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## \* NOTICE OF RIGHT TO OBJECT \*

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* FED. R. CIV. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), as recognized in *ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen*, 857 F.2d 275, 276–77 (5th Cir. 1988).