IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| BETH LEANN FULLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 2:18-CV-032-D |
| VS. | § | |
| | § | |
| HEALTHCARE SERVICES GROUP, INC., | § | |
| | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this action by plaintiff Beth Leann Fuller ("Fuller") against defendant Healthcare Services Group, Inc. ("HSG") alleging a negligence claim arising from a work-related injury, HSG moves to dismiss and compel arbitration. The United States Magistrate Judge has entered her findings, conclusions, and recommendation (sometimes referred to as the "FCR"), in which she recommends that the motion be granted.

After making an independent review of the pleadings, files, and records in this case, the magistrate judge's November 21, 2018 FCR, Fuller's December 5, 2018 objections to the magistrate judge's FCR, and HSG's response to Fuller's objections, the court concludes that the magistrate judge's findings and conclusions are correct in part. It is therefore ordered that the findings, conclusions, and recommendation of the magistrate judge are adopted in part. To the extent the court disagrees with the magistrate judge's findings, conclusions, and recommendation, the court denies HSG's August 29, 2018 motion to dismiss and compel arbitration for the reasons explained in this memorandum opinion and order.

I

HSG is a company that provides housekeeping services for nursing homes and assisted living facilities located in Texas. A non-subscriber to the Texas Worker's Compensation system, HSG maintains an ERISA[1] Occupational Injury Benefit Plan ("Plan") that, *inter alia*, requires arbitration of certain injury-related disputes ("Arbitration Agreement").

HSG hired Fuller in February 2016. It maintains that, as part of her new hire paperwork, she signed a document entitled "Receipt, Safety Pledge and Arbitration Acknowledgment" ("Acknowledgment"), that provides, *inter alia*:

> I also acknowledge that a mandatory employment policy is attached as an Appendix to the [Summary Plan Description ("SPD")] for convenience of reference. This policy requires that claims or disputes relating to the cause of an on-the-job injury (that cannot otherwise be resolved between the Employer and me) must be submitted to an arbitrator, rather than a judge and jury in court. I understand that by receiving this SPD and becoming employed (or continuing my employment) with the Employer at any time on or after January 1, 2016, I am accepting and agreeing to comply with these arbitration requirements.

D. 8/29/18 Response Ex. 1-B (bold font omitted).[2]

---

[1] Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001-1461.

[2] The court is citing the record in this manner because HSG did not comply with N.D. Tex. Civ. R. 7.1(i)(1), which provides that "[a] party who relies on materials—including depositions, documents, electronically stored information, affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials—to support or oppose a motion must include the materials in an appendix," and 7.1(i)(4), which provides, in pertinent part, that "[e]ach page of the appendix must be numbered legibly in the lower, right-hand

In January 2017 Fuller was injured in the course and scope of her employment with HSG. She later filed the instant lawsuit to recover damages from HSG on a theory of negligence. Pursuant to this court's March 6, 2018 standing order of reference, entered by authority of 28 U.S.C. § 636(b) and Rule 2(c) of Miscellaneous Order No. 6 of this District, this case has been referred the magistrate for pretrial management, including making findings, conclusions, and recommendations concerning case-dispositive motions like the instant motion to dismiss and compel arbitration.

In its motion, HSG maintains that Fuller is obligated to arbitrate her negligence claim under the Arbitration Agreement and under the doctrine of direct benefits estoppel. Fuller opposes HSG's motion. After conducting an evidentiary hearing on the motion the magistrate judge entered findings, conclusions, and a recommendation that HSG's motion to dismiss and compel arbitration be granted. Fuller objects to the FCR; HSG has responded to Fuller's objections.

II

When deciding a motion to compel arbitration, the court engages in a two-step process. *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006). First, the court determines "whether the parties agreed to arbitrate the dispute." *Id.* (quoting *Webb v. Investacorp, Inc.*,

---

corner. The first page must be numbered as "1," and succeeding pages must be numbered sequentially through the last page of the entire appendix (*i.e.*, the numbering system must not re-start with each succeeding document in the appendix)." The documents that HSG attached as exhibits to its motion should have been included in an appendix that was properly paginated in accordance with the local civil rules.

89 F.3d 252, 258 (5th Cir. 1996) (per curiam)). "This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb*, 89 F.3d at 258 (citations omitted). Second, the court decides "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). "If there is a valid agreement to arbitrate, and there are no legal constraints that foreclose arbitration, the court must order the parties to arbitrate their dispute." *Celaya v. Am. Pinnacle Mgmt. Servs., LLC*, 2013 WL 4603165, at *2 (N.D. Tex. Aug. 29, 2013) (Fitzwater, C.J.).

III

"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citation omitted). Having conducted a *de novo* review, the court concludes, for the same reasons and based on the same evidence that the magistrate judge relied on in her FCR, that HSG has not met its burden[3] to show that Fuller

---

[3]*See Brendel v. Meyrowitz*, 2016 WL 302282, at *3 (N.D. Tex. Jan. 25, 2016) (Fitzwater, J.) ("The party seeking to compel arbitration need only prove the existence of an agreement to arbitrate by a preponderance of the evidence." (citing *Grant v. Houser*, 469 Fed. Appx. 310, 315 (5th Cir. 2012) (per curiam))); *Weiner v. Citigroup*, 2002 WL 35644779, at *2 (N.D. Tex. Feb. 19, 2002) (Kaplan, J.) ("The burden is on the party seeking to compel arbitration to establish the existence of such an agreement." (citation omitted)), *rec adopted*, 2002 WL 655531 (N.D. Tex. Apr. 19, 2002) (Lynn, J.).

signed the Acknowledgment or otherwise had notice of the Arbitration Agreement.[4] *See* FCR at 9-12. Accordingly, without suggesting that the court agrees in every respect with the magistrate judge's analysis, the court adopts that portion of the FCR that concludes that HSG has not established that an arbitration agreement exists.

IV

Having concluded that HSG has not established that the parties agreed to arbitrate Fuller's negligence action, the court turns to HSG's contention that, under the doctrine of

---

[4]In its response to Fuller's objections to the FCR, HSG contends:

> [t]he evidence presented at the hearing established that Plaintiff had been made aware of the Arbitration Agreement and had been informed that her continued employment with Defendant would constitute an acceptance of the terms of the Arbitration Agreement. *See generally transcript from Evidentiary Hearing on October 12, 2018.* Chris Montoya, District Manager for Healthcare Services, also testified all new employees are provided copies of the Plan and informed that any claims brought against Defendant are subject to binding arbitration. *Id.* Mr. Montoya also testified that no potential employee of Defendant could begin employment without agreeing to be bound by the terms of the Arbitration Agreement. *Id.* This testimony is enough to establish that a valid Arbitration Agreement exists in this matter.

HSG Resp. to Objs. at 3-4.

The court disagrees with this characterization of Chris Montoya's ("Montoya's") hearing testimony. At most, Montoya testified that new employees will not be permitted to work at HSG until all of the required documents are submitted to HSG's Pennsylvania office. HSG did not introduce any evidence that Fuller was made aware of the Arbitration Agreement or that her continued employment with HSG would constitute acceptance of the terms of the Arbitration Agreement.

direct-benefits estoppel, Fuller is nonetheless bound to arbitrate this claim.

A

The doctrine of direct-benefits estoppel is an equitable doctrine that applies to "non-signatories who, during the life of the contract, have embraced the contract despite their non-signatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract." *Hellenic Inv. Fund, Inc. v. Det Norske Veritas*, 464 F.3d 514, 517-18 (5th Cir. 2006) (citing *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 200 (3d Cir. 2001)). Under federal law, "[a] non-signatory can 'embrace' a contract containing an arbitration clause in two ways: (1) by knowingly seeking and obtaining 'direct benefits' from that contract; or (2) by seeking to enforce the terms of that contract or asserting claims that must be determined by reference to that contract." *Noble Drilling Servs., Inc. v. Certex USA, Inc.*, 620 F.3d 469, 473 (5th Cir. 2010).

It is unclear whether federal or state law governs the question of estoppel. *See Peak Pipe & Supply, LLC v. UMW Oilfield (L) Int'l LTD*, 2018 WL 6177268, at *3 (N.D. Tex. Nov. 27, 2018) (Lindsay, J.) (noting that courts have recognized that, while state law determines whether contracting parties agreed to arbitrate under their contract, "it is not entirely clear what substantive law governs whether a nonparty must arbitrate." (citation omitted)). As explained above, under federal law, direct-benefits estoppel applies when the nonsignatory either (1) knowingly seeks and obtains direct benefits from the contract *or* (2) seeks to enforce the terms of the contract or asserts claims that must be determined by reference to that contract. *Noble Drilling Servs.*, 620 F.3d at 473. Under Texas law, direct-

benefits estoppel applies only when a claimant seeks "direct benefits" under the contract that contains the arbitration agreement. In other words, Texas recognizes direct-benefits estoppel when the second, but not the first, prong of the federal test is satisfied.

In its motion to dismiss and compel arbitration, HSG relies only on cases from the Supreme Court of Texas, arguing that "[b]ecause the claims against Defendant are based on Defendant allegedly failing to 'provide a safe work place for its employees,' Plaintiff is seeking to enforce the terms of the employment agreement with Defendant, and Plaintiff's claims could not stand independently of the underlying contract." D. Br. 5. In its post-hearing brief, however, HSG cites *Noble Drilling Services* and argues that Fuller is obligated to arbitrate her claim "under both theories under which the doctrine of direct benefits estoppel can be established." D. Post-Hrg. Br. 3. Because the court concludes that HSG has not met its burden with respect to either prong of the test articulated in *Noble Drilling Services*, it need not resolve in this case whether state or federal law governs the question whether a nonparty to an arbitration agreement must arbitrate its claims.

B

Beginning with the first type of direct-benefits estoppel,[5] the court considers whether HSG has established that Fuller "knowingly exploit[ed] the contract containing the arbitration clause and obtain[ed] a direct benefit from that contract." *Noble Drilling Servs*.,

---

[5]The court assumes *arguendo* that the doctrine of direct benefits estoppel can apply when the nonsignatory is a contemplated signatory to the contract itself, as opposed to a third party.

620 F.3d at 473. "To satisfy the knowledge requirement, the case law requires that the non-signatory have had actual knowledge of the contract containing the arbitration clause." *Id.* (citing *Hellenic Inv. Fund*, 464 F.3d at 515-16, 519; *Bridas S.A.P.I.C. v. Gov't of Turkm.*, 345 F.3d 347, 361-62 (5th Cir. 2003)). Accordingly, where there is no evidence that the nonsignatory had knowledge of the contract containing the arbitration agreement, the first type of direct-benefits estoppel will not apply. *See id.* ("Appellees do not point to any evidence that Noble had any knowledge of the Purchase Order Agreements at the time Noble purchased and received the ropes, and the district court did not find that Noble had such knowledge. Because no evidence supports a conclusion that Noble knew of the terms of the Purchase Order Agreements, Noble could not have the knowledge necessary to support the 'knowingly exploited' theory of direct benefits estoppel." (footnote omitted)); *see also Pershing, L.L.C. v. Bevis*, 606 Fed. Appx. 754, 758 (5th Cir. 2015) (per curiam) ("A nonsignatory must have specific knowledge of the relevant agreement—a nonsignatory's generalized sense that two contracting parties have a course of dealing will not satisfy this requirement. Here, the Bevis Investors have adduced no evidence that Pershing was aware that they had executed contracts to purchase CDs from the Stanford entities. Accordingly, the Bevis Investors cannot satisfy the knowledge requirement of their direct-benefit-estoppel claim."); *Petrobras Am., Inc. v. Vicinay Cadenas, S.A.*, 921 F.Supp.2d 685, 694-95 (S.D. Tex. 2013) (declining to apply direct-benefits estoppel, noting "Vicinay speculates that actual knowledge is evidenced by the facts underlying the action . . . [h]owever, such speculation is not evidence of actual knowledge."); *cf. In re Lloyd's Register N. Am., Inc.*,

780 F.3d 283, 291 (5th Cir. 2015) ("To invoke direct-benefits estoppel under this theory, LRNA first must show that Pearl Seas knowingly exploited the contract during the contract's existence. . . . Because Pearl Seas knew about the contract between Irving and LRNA, acted to exploit it, and gained a benefit from it, Pearl Seas is bound by the forum-selection clause in the Classification Contract.").

HSG has not met its burden to establish that Fuller had actual knowledge of HSG's arbitration policy or of the Acknowledgment when she sought and received benefits from HSG. Fuller testified at the hearing that the first time she saw the Acknowledgment was when it was presented to her in her attorney's office several months after the incident. She also testified that she had no knowledge of any type of ERISA plan, and that, when she sought benefits—medical expenses and paid time off—from HSG, she believed they were coming from a workers' compensation insurance plan. The court has already concluded above that HSG has failed to establish that Fuller actually signed the Acknowledgment. Without Fuller's signature or other evidence to establish that Fuller had actual knowledge of the Plan or its arbitration requirements,[6] the court finds that HSG has not satisfied the actual knowledge requirement of the first type of direct benefits estoppel.[7]

---

[6]Montoya testified as the hearing that he remembered handing Fuller the Acknowledgment and remembered seeing her signature on this document when she handed it back to him. But given the court's finding that the evidence does *not* establish that the signature on the Acknowledgment is Fuller's, the court gives little weight to Montoya's statement that he remembers handing the Acknowledgment to Fuller.

[7]The court's evidentiary findings are all made under the preponderance of the evidence standard.

C

Following *de novo* review, the court agrees with the magistrate judge's FCR that the second type of direct-benefits estoppel is inapplicable in this case. As the Fifth Circuit explained in *Noble Drilling Services*, "the doctrine of direct benefits estoppel . . . applies when a non-signatory sues to enforce certain terms in a contract containing an arbitration clause, or brings claims that can only be determined by reference to an agreement containing an arbitration clause." *Noble Drilling Servs.*, 620 F.3d at 474 (citations omitted). Fuller neither seeks to enforce the Plan nor brings claims that can only be determined by reference to the Plan. Instead, her personal injury claim depends entirely on a negligence theory that arises under common law. And she does not seek to enforce any terms of the Plan. *See* FCR at 17. Accordingly, the second theory of direct benefits estoppel does not apply in this case.

V

The court concludes that HSG has not met its burden of establishing the existence of an agreement to arbitrate, either through evidence of an actual agreement or through the doctrine of direct benefits estoppel. The court therefore denies HSG's motion to dismiss and compel arbitration.

\* \* \*

Accordingly, following *de novo* review, the court adopts in part the November 21, 2018 FCR of the magistrate judge, and, for the reasons explained, denies HSG's August 29, 2018 motion to dismiss and compel arbitration. This case is re-referred to the United States Magistrate Judge for further proceedings under the March 6, 2018 standing order of

reference.

**SO ORDERED**.

January 17, 2019.

_____
SIDNEY A. FITZWATER
SENIOR JUDGE